We'll turn to our next case, United States v. Koerber. Here's the sheet here. That's number 19-4147. Mr. Baldwin, are you ready to proceed? Yes, Your Honor. Hold on, I'm not... make sure Judge Carson is available. I'm here, I'm just grabbing a piece of paper. Okay. We don't have as much desk space as we do on the bench in Denver, so that's why I couldn't find the list and Judge Carson needed some more paper. So, okay, Mr. Baldwin, if you would proceed. Thank you, Your Honor. I may please the court. My name is Dick Baldwin. I represent Appellant Claude Koerber. There are numerous grounds for reversing and vacating Mr. Koerber's conviction in this case. It should weigh extremely heavily on this court's mind that we sit here 12 years after he was first indicted, however. And when deciding what to do about those errors, the Sixth Amendment, severe Sixth Amendment concerns should prompt this court to also dismiss with prejudice when reversing. The first error I'd like to discuss is probably the most obvious, and that is Judge Shelby's refusal to give preclusive effect to Judge Waddup's prior suppression order. Now, this court's recent decision in Arterbury made this argument fairly straightforward and simple. Straightforward application of that case resolves it entirely because there, the court held that a prior suppression order has preclusive effect in subsequent stages of the same criminal prosecution, especially where, just as here, the government had appealed that suppression order in the first proceeding and voluntarily dismissed its opportunity to challenge that decision, and it therefore then has preclusive effect going forward. But you're missing one big point there, which, of course, is in Arterbury, the government folded the tent. And in your case, the government said, let's get a trial date. Absolutely. Now, the Supreme Court, in describing this notion, which the government has pointed out through the Bice decision, has talked about the role, the critical factor here, which is the incentive to appeal. It's not whether or not the government is willing to proceed and that that somehow prevents them from having this prior decision having preclusive effect. Simply because you decide to proceed doesn't mean you then get to relitigate the things that were decided against you in future litigation. And 17 years after Justice Ginsburg authored the Bice decision, she authored Bravo-Fernandez. And in that case, she described why that sort of principle is so important and explains what was happening in Bice. And that is that she described that in the criminal context, the lack of appellate review for the government in an acquittal context, which is largely the way this shakes out, means that the government doesn't have a chance to appeal that decision. And so it results in the issue of preclusion test applying in different ways in the criminal context. Now, with a suppression order, just as Arterbury concluded, the dynamic is diametrically opposed to that. It's the exact opposite, which is that the government has the sole statutory authority to appeal a suppression order. And that makes them much more like a civil litigant who does have the opportunity to have that decision reviewed by the appellate court. And if they decide to forego that, just like the government did in Arterbury, they are bound by it. And that's consistent with the Supreme Court's precedent. And perhaps more importantly, that understanding of the rule is consistent with this court's application of the issue of preclusion test in other contexts. And those cases would be wrongly decided under the government's view of the test. Well, let's talk about the test for issue preclusion, because as a general matter and common law, issue preclusion requires that the issue be essential to the determination. And that was clear in Arterbury. It was the death knell. Suppressing the evidence removed any possibility of prosecution. Here, the decision that was made to dismiss the case was under the Speedy Trial Act. There were two steps to that dismissal. One step, the one finding that it should be dismissed with prejudice, that was reversed by this court. So that has no issue preclusion effect. And the first step in the Speedy Trial Act analysis was whether the act was violated. And the merits of the suppression motion had nothing to do with that determination. It certainly wasn't essential to it. Maybe it had a little bit to do. It certainly wasn't essential. It might have been much more important on whether the dismissal should be with prejudice. But as I mentioned, that was reversed by this court. So how do you satisfy the essential, in quotes, requirement? A number of ways, Your Honor. And respectfully, I wholeheartedly disagree with your characterization of the essentiality. And the government does, too. At page 32 of their brief, they conceded that Judge Waddup linked the misconduct to his decision to dismiss. To dismiss with prejudice. No, his dismissal. They say that they then challenged whether or not it was essential.  I'm not sure they did concede that when I looked at it. But it's also important to know, was it essential? Yes, it was. In addition to that, Judge Waddup thought so. Certainly with respect to whether it should be with prejudice. But in terms of whether the act was violated, the act was violated regardless of whether the time for the appeal is considered or not. And the problem with the appeal, insofar as the Speedy Trial Act is concerned, had nothing to do with the merits of the appeal. That's not how Judge Waddup saw it. He expressly linked the delays to the misconduct. And the delays were the basis for the dismissal, not the prejudice determination. It applied to both. That doesn't mean that it didn't apply to the decision to dismiss. That's at Volume 9, pages 2201 and 2202 of the record. And perhaps more importantly, Judge Hartz, an opinion from this court that you authored might be more in capital front. This court considered the essential to component of issue preclusion. And in that case, it was a civil case. In that case, there was a jury verdict that was a split verdict that found liability for both the plaintiffs and the defendants in a variety of tort and contract claims. Subsequent to the jury verdict, the parties moved for fees. And Party A alleged that Party B had engaged in bad faith and should get a little bit of extra fees. The court granted both parties fees but declined to find there was bad faith and therefore declined to award the extra fees. So then Party A files a second lawsuit, a RICO suit, claiming that Party B's bad faith led to increased litigation costs. And in your opinion, you explained that that bad faith finding had preclusive effect because it was, quote, the adjudication was, quote, necessary and essential to the court's determination of the parties' motion for fees and costs. So there's a couple of errors there. First, the essentiality test is that it's material, not that it is dispositive. Second, the outcome that you're looking at is not the outcome of the entire proceeding. It's whether or not it was a fully decided issue from which the party could have appealed. And if they didn't appeal, just like in Arterbury, they're bound by it. The whole point is the reason the essentialness is one of the reasons for requiring essentialness is we don't want to encourage people to appeal when they have a very weak ground that would be dispositive. Even though there's another ground that would bother them and they think it's wrong, but they're probably going to lose the appeal anyway. So why waste everyone's time with an appeal? So if it's not dispositive, if there's an alternative ground for losing, then you don't want to make people appeal. Now, that's a very debated point. Justice Alito criticized that view in a concurrence or dissent not long ago. But that's the common law rule as stated in the restatement second of judgments. And it has to be it's not just that you could have appealed it. It's that you had an incentive to appeal it. They certainly did hear your honor. They did appeal and they chose to dismiss. Let me break in and ask you a question. I think may tie in with Judge Hart's line of questioning to you. When the government did appeal that, they didn't just get to file an appeal even if they maybe thought it was a weak issue. Right. They had to certify that this was an issue that was material and that could absolutely have an effect on the case. What's the nature of that certification and how does that play into what Judge Hart is talking about? It's a statutory requirement that the government certifies that the suppression order involves evidence of a substantial evidence of a material fact. And there are statutorily required under Section 3731 to make that certification in order to appeal a suppression order. And but the U.S. Attorney's Office doesn't have authority to do that. The institution that that has to approve. This type of appeal is the Solicitor General's office or at least the criminal division of the Justice Department. And that's why it was withdrawn. They didn't have authority to do it. Am I right? Am I wrong about that? You're correct. Solicitor General declined to authorize the appeal. That does not mean that the Solicitor General is the person who certifies. The U.S. Attorney's Office is the one who signed the certification that this was substantial evidence of a material fact. The Solicitor General's office has the discretion to decide whether or not to approve a U.S. attorney from proceeding with the appeal. That does not mean that the U.S. Attorney's Office did not believe it was important or that it was that it had the incentive or that it, in fact, did try to appeal. And let me just follow up with that a couple of a couple of follow up questions. I mean, the U.S. when they withdrew their appeal, they didn't withdraw their certification and basically admit to the court that it was erroneous or that they didn't have authority to make the certification. They just withdrew it and said that the solicitor hadn't approved it, so they had to withdraw it. That's right. And OK, go ahead. I would I would just quickly I want to move to a different point, but there are a lot of issues in this case. Don't worry about the clock right now. All right. I am worried about the clock. Let's vet this issue thoroughly. I think Judge Phillips wants to ask a question. Yes. One problem with what I'm hearing your argument is you're making it sound like Judge Wattups dismissed solely on this basis. But there were all kinds of delays in this case. Heaven knows. And this was one of those he very well may have dismissed even had this not occurred. Right. Absolutely. Right. To be clear, I am not arguing that Judge Wattups decision was solely based on that. I wholeheartedly reject the government's view that issue preclusion requires that the issue is dispositive. And this court has done the same thing again. Well, isn't isn't that the same thing as essentiality? No, it's not. The court has has used essentiality again to to be a way of triangulating what the important issues are that give a party the incentive to want to try to repeal it. That's how we balance those concerns against promoting unnecessary appeals versus ensuring the critical appeals. So it can be essential for issue preclusion, but be just one factor in dismissing the case. Absolutely. And I think any other view of that would be would collapse the distinction between issue preclusion into claim preclusion. If it's dispositive, you're talking about claim preclusion, not issue preclusion. And this court has no, no, no. That's not true. The issue preclusion is different because you can use it when there are different claims involved. Not if it's just if it would have to be dispositive, it couldn't be. So imagine a Lanham claim where a party, the plaintiff alleges there was false advertising and the other party breached the contract. But the court disagrees on both of those. There was no false statement. And the other party never signed the agreement that there's not a single issue, but those issues were both fully decided. And so deciding that they could relitigate the question of whether they signed the contract would conflict with this court's reasoning. Maybe that's a lawsuit against another party. It may be that. Well, that couldn't be claim preclusion when it's a different party. No, but attempting to assert it again defensively, it would collapse into claim preclusion. The non-mutual versus offensive and defensive is another interesting dividing line with issue preclusion where it's mutual defensive collateral estoppel, which is what was what was happening in Arterbury and which is happening here, is where issue where preclusion doctrines are at their strength. Now, in the criminal context, the inability to appeal and acquittal is an important layer, but that's not present here. And the dynamic is exactly reversed because only the government could have appealed the suppression order. They tried to and they can't relitigate it again under Arterbury. And an interesting or an interesting counterpoint to that is how this court has looked at suppression orders in the 1983 context. There were a criminal defendant asserted a constitutional violation in a motion to suppress, and that was denied. This court has said that they are precluded from asserting a 1983 claim based on those constitutional violations going forward. That's not dispositive as to the outcome of their criminal prosecution any more than than then. It is far less dispositive than Judge Wattup's conclusions about misconduct were here. And I think an important point that I want to make is that thinking about there's a bit of a dilemma that the government has here, which is even if we accept their view of this test, that it requires that the court relied on this misconduct in a way that was essential when deciding whether to dismiss with or without prejudice. This court remanded with instructions telling the court, the district court, that it had to rely on those facts when deciding whether to dismiss with or without prejudice. And either it did or it didn't. And perhaps that's an important question the court needs to answer is whether or not the court really did rely on those facts as an essential part of its analysis like this court instructed. If it did, then that decision does have preclusive effect going forward under Arduberry, even under the government's extreme view. If it didn't, then Judge Parrish erred when re-weighing the prejudice. Wrap up what you're going to say on this issue very quickly in 20 seconds, and then I'll give you some time to address other issues. Well, that was me trying to artfully transition over to the speedy trial issues. Okay. To say that, you know, even if we accept... You don't have to be artful, you can be straightforward and you may get your way. Well, so either way, even if we accept the government's test, there's an error here, either in not enforcing the suppression order or in the way that the court then handled the suppression issues in the prejudice determination when dismissing. And the flaw of Judge Parrish in that prejudice analysis is that she failed to make any findings or engage in any way with the relationship between the conduct that led to the delays. And this court has talked about the importance of looking at those root causes when a court is evaluating the reasons for a speedy trial delay. That's in United States v. Black, which is 830 F3rd 1099, where this court not only said that the root cause is an important factor, it even went so far as to say that where a criminal defendant has been found to be culpable for more than 50% of the delay, if the root cause is the government's conduct, that factor still can weigh in favor of dismissal for the defendant. And here, even accepting Judge Parrish's faulty findings that Mr. Kerber is responsible for half of the delays, there are findings of misconduct to show that his delays were reactive to what the government was doing, and there was a relationship there that shows that their root cause was the government's misconduct, whether it was withholding discovery, which is something that Kerber could not possibly share culpability for, whether it was the government's decision to improperly rely on privileged materials, which took two and a half years for them to issue an indictment that did not rely in some way on a privileged document, whether it was their decisions to attempt to intrude into the attorney-client relationship that led to the suppression order in the first place. These are all events that caused delay that led Mr. Kerber to litigate these issues, and for which he could not possibly share culpability for the root cause of those delays. And so under United States v. Black, that factor should weigh very heavily in favor of dismissal with prejudice. The prejudice determination is particularly salient here, where the delay at the point that the court was evaluating prejudice had already been seven years. Now, under Judge Parrish's reasoning, she attributes only half of that to the government. So there are only three and a half years of delay at that point. And the problem from where we stand now is that that decision has now been seven years in the past. And so moving forward, given that there is an unavoidable error here, depending upon how the court decides, Judge Parrish dealt with those findings in the prejudice determination, the court has to decide what to do going forward. And those seven years, even if we assume that those seven years should be divided equally again by the government and Kerber, adding the two and a half years to that three and a half years gets us to the six-year presumption that there is a Sixth Amendment speedy trial prejudice problem here. Are you aware of any authority that says where there's an extraordinary delay that just because it's maybe 50-50 that, you know, the tie sort of goes to the government and it ends up in a without prejudice dismissal? I'm not. Instead, this court in many cases seem to suggest the opposite, depending upon what the reasons were. You know, your question is about extreme delay. I would say in cases of extreme delay, the court seems courts seem to treat extreme delay as almost a third way of it. They have drawn a hard line to try to avoid those cases of extreme delay because the suggestion seems to be that where the Sixth Amendment will swing into action, where there has been such an extreme delay. I mean, obviously, a constitutional right under the Sixth Amendment is that's a heavy hand to bring down in a case. But where the delay has been so extreme, courts seem to be very wary to let the tie go to the government. This seems to me to be a case where the delay is pretty extreme. I mean, this is a longstanding case. I wholeheartedly agree. What's your best case on that? Well, so this court's decision in Taylor says that anything but an unwitting violation weighs in favor. The presumption for six years. I'm sorry, let me find where that is. The presumption for six years is from this court's Larson decision, 627 F3rd 1198. And another factor that I think should be important is that the extreme delay here, not only is the time that had led up to this court's last decision and the two trials that have occurred since then, but if there's a remand here, depending upon the grounds, the Sixth Amendment concerns are going to become overwhelming. If the reversal is based on the arbitrary, the lack of suppression, there's going to have to be a fruits hearing to decide what evidence the government even can use to prosecute Mr. Kerber. There will likely be some pretrial motions about whether or not the government at that point even has enough evidence to proceed. There will almost certainly be Sixth Amendment motions saying that at that point it's just too long and it needs to be done. There have to be another trial. I mean, this court would have to issue its decision between now and then. There are significant proceedings that would happen if this court entertains a remand. This case is an unseemly spectacle and this court should put it to bed. Thank you. I think we've given you plenty of time. Thank you. But I need to ask you one question. In your argument on essentiality, you cited an opinion by someone using my name. Could you give me the site to that case, please? Absolutely. And, you know, I'd be happy to submit a 28-J letter with the couple of cases I mentioned here, but the one that I mentioned that you authored. They weren't in your brief, is that right? Right. This one was not in the brief. Okay, that's what surprised me. Okay, good. It is consistent with our argument, but it's not in the brief. So the site for the case that you authored is 749 F. 3rd, 1180. That's Knight v. Mooring Capital Fund. And then the 1983 cases where the court has found suppression orders were perclusive, even when they were denied, is there were two that Judge Mathison issued last year, 814 Federal Appendix 325 and 815 Federal Appendix 227 and then an older one, 122 Federal Appendix 899. Okay, thank you. May I ask one question that should be covered? Sure, sure. For more than a 30-second response, which is I'm confused by your argument on 3288. Can you just succinctly say what the government needed to do to comply with that statute, savings clause, savings statute? The government needed to have re-indicted within 60 days of Judge Parrish's decision. Okay, that's what I thought your answer would be. Thank you. Okay, thank you, Mr. Tenney. Good morning, Your Honors. May it please the Court, I'm Ryan Tenney, and I'm here on behalf of the United States. Subject to questions or direction from the Court, I'll just go in the order that Mr. Baldwin went. I'll start with the issue of preclusion issue, and then I'll move from there to the Speedy Trial Act issues, and then proceed accordingly. The argument that Mr. Baldwin made in his reply brief and that he stressed today is that it's sort of a combination of either that there is no essentiality element, or that if it is, it really folds into the first element of issue preclusion. And at a bare minimum, he's suggesting that it's not linked to the final outcome of the case. We think he's wrong on the merits, but we think there's a prefatory reason why the Court shouldn't go there at all. It's that he both invited any such error below, and he waived it in his opening brief. Let me start with invited error. When Judge Shelby asked for briefing, supplemental briefing, on issue preclusion, the government argued, volume 12, page 3053 of the record, that the reason that issue preclusion did not apply was that the suppression ruling, quote, played no role in the dismissal of the first indictment, so it could be reconsidered in the next case. At the hearing on this issue, Judge Shelby asked defense counsel whether she agreed that there was an essentiality component to issue preclusion. And at the supplemental appendix of page 108, this is what defense counsel said, quote, It has to be essential to the judgment. These are all common law principles. It has to be essential. So at a bare minimum, she conceded below that there is an essentiality element. So Mr. Kerber, respectively, can't make the argument now that there is no such element. So what I understand him to be doing is saying, well, there is something that sounds like an essentiality element, but it's not linked to the final outcome. Here's the problem with that procedural. He didn't make that argument in his opening brief. And that would be excusable, of course, under appellate norms if this was something that we had come up with on our own in our appellee's brief. But it wasn't. This was the centerpiece of Judge Shelby's ruling. Judge Shelby discussed it for two full pages of transcript at volume 31, pages 72, 89 to 91. These are his words. He said this was, quote, the determining factor on issue preclusion. He cited Bobby versus Beast by name. He even gave the reporter citation. This was the only element of issue preclusion that he said was not met. And he gave a very specific version of the essentiality. He held volume 31, page 72, 91. But the essentiality element was not satisfied because the outcome of the suppression ruling was, quote, irrelevant to the decision that caused the dismissal of the first case. So the ruling at issue was Judge Shelby's ruling that issue preclusion did not apply because the suppression ruling was not linked to the outcome of the case, meaning the speedy trial act dismissal. So if Mr. Kerber was going to challenge that ruling, he had to make his argument in his opening brief. In his opening brief, he sort of has a glancing discussion of this on page 26. And he says that the essentiality element was met because, quote, the suppression order was necessary to the dismissal. But here's what he didn't say. He never came in and said, look, the element changes based on whether it was based on the common law or double jeopardy. He never said it's not linked to the final outcome of the case. It's only linked internally to the ruling itself. So the whole first 12 pages or so of his reply brief and all these arguments that he's made, they're new. And we've got responses to them. We think he's misreading the case law. But as an appellant, he's required to challenge the grounds that the district court gave. And the district court said issue preclusion doesn't apply because suppression wasn't linked to dismissal. And if he thought that that was wrong procedurally, or if he thought that that was a misreading of beast, or if he thought that that was a misreading of how essentiality works, he was required to put that into his opening brief so that we could respond in writing rather than having to come into argument and do it for the first time. We think he's waived it. We think for purposes of this appeal, he's stuck with the version that Judge Shelby gave in which he did not contest, which is that essentiality is linked to the dismissal. Let me ask you this. When Judge Shelby decided that, I haven't compared the dates. Was Artivari decided? I believe it was before Artivari. Okay. So, I mean, one of the things that I think you're glossing over is that Mr. Baldwin's, his argument is premised on Artivari and, you know, what he views as its lack of a requirement for this strong essentiality element. And so if that's true, and that case hadn't even been issued at the time Judge Shelby decided it, I mean, how are you going to say that he waived it when he brings it up here by not putting it in his opening brief? And then when you bring it back up and say, no, no, we disagree, that is still here. I mean, isn't it fair game for him to now address that in his reply brief? Well, Judge Carson, I think that the chronology that you're referring to might in theory get him around the invited error problem, but I don't think it gets him at all around the appellate waiver problem. Because what matters there is whether it existed at the time that he filed his opening brief. When he files his opening brief, he's challenging Judge Shelby's ruling. This is the basis of Judge Shelby's ruling. And so if he wants to come into his opening brief and say, you know, Judge Shelby didn't have the benefit of Artivari, and Artivari makes it clear that this element doesn't apply this way, then that would have been an argument that we could have responded to. And then we could have done the Artivari versus Biese analysis as to the essentiality elements components. But he didn't make that argument. You didn't appear to have missed that in your own brief. No, because Judge Shelby's ruling helped us. Right, right. But our point is, if he thinks that Artivari somehow distinguished or altered the Biese standard, which is the standard that Judge Shelby expressly invoked by name, then he was required to make that argument in his opening brief. And he did. Okay, fair enough. Let me ask you another question. So what would your position be in this case if you guys, the government, had appealed the grant of the motion to suppress, the solicitor had not come in and made you withdraw your appeal, it had been fully briefed and decided by the court, and the grant of the motion was upheld. What would your position be today? In terms of the issue preclusion component? Yes. And then if the case was then dismissed on speedy trial act grounds that were unrelated to the suppression ruling. I don't get up all the way and fully litigated it and received an adverse decision. Yeah, I don't mean to duck your question, Your Honor, but I'm going to duck your questions. I think it's unavoidable to duck your question because if a court in a subsequent case came in and disagreed with you on suppression, it would be reversed on that ground anyway. I don't think we'd ever have an issue preclusion fight in that scenario. Because at that point, you'd have a binding decision. You'd have the case or just binding precedent? You'd have binding precedent on the merits of the suppression issue. And so if the case were refiled, if you got through the issue preclusion component and the case were then refiled and the suppression issue were re-litigated, you'd have a 10th Circuit decision under your hypothetical saying this is the law on the suppression issue. So I don't think anybody would ever bother with the issue preclusion. Let's stop for a minute. So how is that materially different here? Because what you have is a District of Utah case ruling on the precise issue. And I realize there's some other things floating around out here, but this just sort of bothers me. And you appealed it and you certified that it was a material issue. And I've noticed that in your brief, you attempt to sort of say, well, yeah, we certified it was material, but we had other evidence. Sure you did. Well, if it wasn't important, why did you appeal it is sort of the problem I see. But anyway, you appeal. Ultimately, you dismiss your appeal. And the District Court's decision stands at least as far as it went with Judge Wadhams. I mean, to me, that puts you in the same place as if we would have ruled on it and affirmed it. Because it's fine. It's done. You took it up. By dismissing your appeal, you essentially conceded it. No, with respect, I disagree with that formulation. And here's why. There are a lot of different things that any party is looking at when it's thinking of filing an interlocutory appeal. One of them, certainly, and I think this is the premise of your question, is the merits. Do we think the ruling was wrong? How wrong is it? How likely is it? Do we think that the appellate courts can reverse? But there are other things that a litigant is looking at, in particular the government. We're looking at how long is the appeal going to take? Do we have victims who need resolution? And so forth and so forth. And so you can have a scenario, and I'll suggest to you that this is the scenario here, where a party is thinking maybe we should appeal, maybe we shouldn't. They file the appeal, and then they change their mind. Now, here, the dynamic that you're pointing to is that the SG is the entity that changed their mind. But that's what happened. But there was good reason that had nothing to do with the merits for doing that. Where's the reason on the record? Well, we didn't give the reason, but we don't have to give the reason for withdrawing our appeal. Oh, I understand. But you're trying to tell me, well, for all you know, Judge, it could have been because we were worried about it taking too long for the victims. We made some other internal decision that we didn't want to do it. For all I know, it had nothing to do with the merits, or maybe you thought you were going to get poured out up here, and maybe you thought then you were going to be stuck with it. Then you couldn't go back and try to convince another judge or somebody that it was okay when you were indicted. Right. Two things there, Your Honor. First of all, Ash v. Swenson on issue preclusion talks about looking at the circumstances of the case. And here, I'm going to push back a little bit on part of your hypothetical there. We know what the government tried to do here because the government did it. Immediately after withdrawing its appeal, almost immediately, the government said, let's go to trial right now. And so we know that whatever it was that was driving the government's thinking was not going to force the government to try to get out of this case or even get out of Judge Waddup's, because at that point, Judge Waddup's hadn't recused. What the government said to Judge Waddup's was, let's go to trial right now. And so whatever the government was doing or not doing, the government was clearly ready to go to trial, which makes it fundamentally different. The second part of your concern, Judge, is the forum shopping concern raised in the reply brief. And let me just address that head on. Mr. Kerber is asking you to not apply the essentiality element from the Supreme Court based on concerns that this will lead the government to game playing. We don't like a suppression ruling. We're going to maneuver a dismissal, try to get it refiled, and off we go. And that's the way. There are already procedural roadblocks that prevent us, effectively prevent us from doing that. That is not a concern you should have. The starting place is, I've got three of them. The starting place is Rule 48A. Rule 48A does not allow the government to unilaterally dismiss its own prosecution. We have to give reasons. There's a decision. We would have cited to it if Mr. Baldwin had made this argument as opening brief. There's a decision, United States versus DER, D-E-R-R, from 1984 from this court. It's a published decision that interprets the scope of the Rule 48A analysis. And what it says is if the government moves to withdraw its case to dismiss its own indictment and it gives reasons and the district court does not like the reasons, it can deny the request. And it even goes beyond that. And it says that if the district court allows dismissal of the first case, the case somehow gets reindicted and the second judge in the second case thinks that he doesn't like, he or she doesn't like the reasons the government gave for dismissing the first case. They can dismiss the second case. So if what we're trying to do is get around a suppression ruling, first of all, we have to come up with a reason that doesn't sound like forum shopping so that the judge will sign off on it. But then you run into the practical problems. Here are the two practical problems. Problem number one is there's no guarantee we're going to get anything because there's absolutely no guarantee that we're going to get a new judge on reassignment or that the new judge will see the suppression issue any differently at all. And then there's a third problem, which is that the district court benches in this circuit and most circuits are relatively small. So if the United States Attorney's Office gets into a practice of routinely dismissing its own cases, refiling them, and it appears to the district court bench that what we're trying to do is get around suppression rulings, to put it mildly, that's not going to help our long-term institutional interests. And so this notion that if what we want to do is get out of a suppression ruling, what we're going to do is manufacture a dismissal for reasons other than that, and then hope that we get a new judge and hope that the new judge sees the suppression issue differently and hope that we survive Rule 48A and hope that the judges don't hold this against us, I don't think is realistic, and Rule 48A is already the roadblock. I'll take your word for it. I don't want to use all your time on this. Yeah. But our bottom line point, before I move to the speedy trial stuff, we don't think that he's allowed to argue that essentiality gets you beyond the outcome determinative thing. We understand that there's a lot of complexity to issue preclusion, but if you do nothing more than take Bobby v. Beast at its word, Bobby v. Beast uses the phrase, this is the phrase, the determination ranks as necessary or essential only when the final outcome hinges on it. Hinges. And then it uses the phrase final outcome. And if you simply apply that there, the final outcome in this case was a dismissal without prejudice. That was the final outcome. And that did not hinge. Well, that's the merits of the issue.  Right. We haven't addressed that. Okay. Explain why Mr. Baldwin is vigorously arguing that, in fact, the decision by the U.S. Attorney's Office to appeal and then not appeal was essential to the first step of Judge Waddup's dismissal on speedy trial grounds. Yeah. It was an important factor or an essential factor in determining that the Speedy Trial Act was violated. Would you respond to that? Yeah. And if I miss the angle, please redirect me because there's multiple things going on there. Sorry. You have the dismissal part, and then you have the prejudice part. Yes. The dismissal part has to be based on timing. The Speedy Trial Act is a timing statute. And there's a danger that runs through some of the briefing here of conflating two different things, timing problems with the sort of overall specter of the case. I think that the concerns that Judge Waddup's had about the interviews and the alleged unethical misconduct and so forth, that really went to the prejudice component. But when we're talking about the dismissal, that's just purely a function of how many days were excluded, how many days lapsed. His discussion of the dismissal component in the ruling is fairly brief. It's two pages. What it really came down to is the government had conceded in a hearing that if a few of the particular ends of justice orders were not excludable, that it lost on timing. And then Judge Waddup says at the beginning of his ruling, they're not excludable, and that ended it. And so we – Were any of those ends of justice orders, did any of them concern the suppression? I don't recall offhand, so I don't know that I can answer that right now. But this, I think, gets to our point, and this is going to bleed over into the speedy trial discussion, which I wanted to make sure I had. I know we're out of time here. When we're talking about number of days, and even to a large extent when we're talking about the prejudice component, the Speedy Trial Act is about timing. A defendant can be successful on every single motion that he files. But if he files them in a delayed manner, if he files them at the very last minute and files them seriatim, and by doing so delays the case, the government can hardly be held responsible for the delays associated with the case, even if the defendant is successful in his motion. So whether the government acted improperly, thus leading to suppression of the evidence, is not the issue. The issue is whether, based on the timing of how things were litigated, the case A should have been dismissed and then B should have been dismissed with prejudice. And if I may, I'd like to respond to the very particular claim. You've got some more time. Yeah, I wanted to make sure I got to this, which is why I tried observing at the beginning. This question of whether the government can be held responsible for all, let alone most, or let alone any of the continuance requests that Mr. Kerber made, because he doesn't dispute in his reply brief, and I don't think he can on the record, that Mr. Kerber requested and or acquiesced to a very large number of continuances in this case. I can't find a speedy trial act or speedy trial constitutional claim anywhere like this, where a defendant agreed to anywhere remotely near this number of delays and then somehow prevailed. And so he tries to get around this by making this broad, generalized claim that, well, the government's responsible for this because it acted unethically. So therefore, all of my continuances actually fall on the government, not me. Let me give you a list of examples from the extant record, and we don't have a record. We don't have transcripts of all the many, many hearings over the 10 years. Let me just give you a list I compiled over the last few days of the ones that we have on this record, where the reasons that Kerber gave on the record for his own continuance requests were independent of government action. On August 4, 2009, he asked for a one- to two-month continuance because his counsel had a three-week trial in California. That has nothing to do with us, and I can give record citations for any of these if you'd like. On January 27, 2010, his counsel asked for a three-month continuance, and he explained that he was still reviewing discovery. On February 17, 2010, he asked for two to three more months, again explaining that he was still reviewing discovery. On August 31, 2010, he asked for five more months, again explaining that he was still reviewing discovery. On November 16, 2010, he asked for time, again explaining he still hadn't finished reviewing discovery. On December 15, 2010, he asked for a continuance of the motion deadline, quote, until further notice, and this is the quote he gave, because I'm still reviewing and analyzing the voluminous discovery provided by the government in this case. On November 15, 2011, he asked for five more months to file motions, explaining, quote, we have been litigating issues that have been presented. Okay, maybe the last one, but the previous ones where he's repeatedly telling the courts, I need more time because I haven't reviewed everything that I've gotten. So let's take that. So what if we get into this record, and it appears that you've been trickling out the discovery, and that it's apparent from the record that one of the reasons why he's needed more time to review discovery is because of the way you've produced it. You know, you're not, I mean, that's the problem with, with, you know, your bullet points here is, is there, they're not real clear. Okay, let me respond. Yeah, let me just that's that was that was almost rhetorical so I'm not even sure you can answer it, but I'd like to if I may, though, go ahead. Right. If what Mr Mumford, who was his counsel at the time was saying to the court and all these hearings was the government still hasn't given me all the discovery and I can't make litigation decisions until it does. That would be the premise of your question, Judge Barson, but what he's instead saying is I haven't even read what I've gotten right okay well so fair enough so but he has a taking your first point he did make some claims like that. He's making them and if you go to those hearings just to head off to 28 day response. If you go to those hearings he's saying multiple things in these hearings he's saying look, the government's given me a ton of discovery, I haven't looked at it all. Also, we've got all these emotions that we're litigating so let's just stop everything until we're done. So he's saying both things. But our point is, if what you're looking at for timing purposes is who's responsible for the delay. And he's saying I haven't even read the stuff I've gotten. And if we had given him more or more quickly, then it's not going to speed anything up it's just going to keep slowing it down because he's not even reading what we've given him. Well, it sounds to me like your position is that you could engage in abusive conduct, and that it wouldn't matter if the delay on reviewing it and discovering that your conduct was abusive was his problem. I think it would matter but it would get into the holistic analysis that the speedy trial act factor to ask for I mean what Herber one says in the opinion to members this panel road. It has this line quoting the United States Supreme Court's Taylor decision that says that a defendant who quote waits passively while the time runs or accurate quote acquiesces to the postponement of this case doesn't have a claim to with prejudice dismissal. So if what you have, Judge Carson is is government abusive litigation practices there's all kinds of remedies for that. But if what you have simultaneously as a defendant who's acquiescing, or who's sitting on his hands himself then that defendant doesn't get a timing based dismissal. But then there's a broader systemic point it's not just these continuous requests. There's a broader problem and it's the one that Herber one identified specific as a whole paragraph devoted to this, which is the even aside from the continuous request which we think alone is enough to defeat his claim here. You have the nature of his motion practice. The early case was driven really by three motions. It was driven by his protective order motion, his suppression motion, and then his timing motions. And the record already tells us that he delayed filing all three by years cost when he could have filed all three of those motions, the indictment is filed in May of 2009 the indictment contains one of the charges is based on the privileged letter, the to our lenders letter. So he knows as of May 2009 that the government has this letter and he doesn't file the motion for protective order, as this court noted in Gerber one, he doesn't file that that motion until February 2010. So even there he's waited nine months to file a motion that he knows is good. Then you have the suppression issue, he knows from the moment he's interviewed that he didn't have counsel. And he knows that that was an interview happened in August of 2010 we've put inside the brief his counsel told the court that he was going to file this motion on this basis in November 2011 he said again, this is going to come. And he doesn't file the suppression motion until July 2012, he's going to claim in rebuttal because he sort of hints out in reply that no no he didn't know the operative facts specifically that the government USA has had scripted questions and so forth. But here's the thing we didn't, we didn't learn that until the evidentiary hearing on the suppression motion suppression motion. So if he'd filed a suppression motion earlier we would have learned that or he waits. That's that's a little bit disingenuous isn't it because you guys, you guys were in the middle of it. All the things he was complaining about that he was saying he was going to file motions about you. Maybe not you personally but people in your office, and the agents had engaged in the underlying conduct that he was talking about you know what it all arose from it was right. I didn't find out what happened until he sprung it on you. I mean, you were aware of, and then participated. Right, but this is the point that we're making is is the claim that he's making is not substantive based on on the suppression I mean that you get the remedy for the suppression motion in the suppression motion. The remedy is asking for is a timing based. No, I get that but your argument to me was, was not just timing it was substantive because he sat on this knowing about it the whole time, and that you guys didn't even find out really until he said it. Well, no, no, I don't, I don't mean to suggest, I don't mean to suggest the latter part at all it's the former part that I think is dispositive to the point that I'm trying to make, which is, I get that point I don't want to belabor that. Right, but then the delay delay everywhere, and Judge Paris looked at this, and on the defendant side of the delay, did she make a finding as why he was stealing. She did she makes a specific finding that he was intentionally delaying to manufacture a speedy trial dismissal, that's a specific finding of judge parish, and what do we do with that on appeal is that a fact finding that is subject to clear air that is traditionally been treated as a fact finding. Yes. And so that so that's our, that's our point, your honor, Judge Carson if I if I can take one more brief stab at your question. Here's the concern that we have it again if a defendant files motions to Siri Adam, he files a successful motion in year one, he files a successful motion in year two year three year four and so forth. He's going to get the substantive benefit for each of those successful motions. Nobody would dispute that. But if he then comes back in at the end of year five and says look I succeeded in year one on that motion, and year two on that motion and year three on that motion and year four on that motion. So now give me a timing dismissal. What Kerber one says is no, because on the timing issue, he acquiesced to the delay. And so here where he waits three years to file the suppression motion that delay is on him, and where he waits four years to file the speedy trial act motion that delay and found that motions on him I mean on the speech trial, that was the third motion I was referring to the cases are a little bit fuzzy about when exactly a speedy trial act or a Sixth Amendment timing claim accrues, but they start talking about these claims being viable a year, a year and a half or so. He was four years to file a speedy trial act motion, if you want, if he thinks that he needs to get to trial sooner he could have filed that motion in two years, he makes this claim in the reply brief he says that he was stopped by Judge Wattups he asserts the judge Wattups said early on that nobody could could do anything until the protective order motion was found. If you go to that citation, it's volume 24 page 5902. What Judge Wattups actually said was that he was going to suspend the motion cut off until the protective order with litigation was resolved. He never says that nobody can file motions. But even beyond that, even if that had been what he had said he rules on the protective order motion in June of 2011. And yet, we're coming back to it. And then he waits another three years to file his timing motions. So if what we're talking about is timing, and that's what Judge Parrish was looking at with her discretionary authority, and what she's looking at are two things, really. One, he keeps asking for continuances. And if you look at the record he's saying he hasn't read what he had. And two, he waits nine months to file protective order motion three years to file a suppression motion four years, four to five years to file a timing motion. How can he possibly get a with prejudice dismissal on a timing motion where he contributed to so much of the delay. And that's, that's where her discretion comes in. And that's it. One final point I hope I'm not abusing the court's indulgence on the time, he makes this claim that she didn't account for, among others, the suppression ruling. If you look to her ruling had it. It's the second page of her ruling it's the appellate appendix page 2333. This is in her background section she has a block quote from the suppression ruling. I mean it's true that when she gets into the speedy trial act analysis factor two, she doesn't discuss it but she hadn't been directed to, she's clearly aware of it she included a block quote from the suppression ruling in in her motion so she's clearly aware of it she just didn't think it mattered. In light of everything else. Be happy to address any further questions on any of the issues I know there's a lot that's been briefed and talked about. There's a lot. But I'm frankly enjoying it because we had really good counsel today. So I'm going to give Mr Baldwin. I'm glad to see my colleagues nodding their heads in place. But this, this is what we live for. So, Mr Baldwin, I'm going to give you five minutes. Five minutes for rebuttal. Okay. So I think there's there's two main points that I think I would like to make sure that I respond to there. The first is Arbery satisfied the vice requirement of essentiality. That's consistent with this court's precedent I don't want to beat a dead horse here, but this court has looked at what the final outcome of the case is in a post vice decision as the decision in which that issue was decided. So in vice that issue that was being decided was the jury's verdict. The final outcome for that decision was the verdict, and there the court couldn't be certain the jury actually made that decision. In the heart's opinion that I had cited to you earlier, your honor, you, you reasoned that the issue of bad faith was both necessary and essential to the outcome of the motion for fees. That was after there had even been a jury verdict in that case that's not essential to the outcome of the entire proceeding. Here, the suppression issues are absolutely essential to the suppression order and that's the order to which finality attaches for purposes of having the ability to appeal and falls within the reasoning of artery. There was no reason to address the basis for judge Shelby's decision, because it was decided years before artery artery makes us a foregone conclusion and frankly a simple case for this court to decide that that is the error. The second point that I'd like to raise is that so much of the back and forth with the government illustrates the lack of findings by judge perish. And this court's instructions in United States versus black explains that the court needs to go through that analysis the exact discussion that this court was just having is precisely what judge Paris is required to do, and she didn't do. She didn't engage with these questions about, well, what is the relationship. What so okay perhaps Mr Kerber did take some time to file some things, and, you know, what role did judge was playing that when he did say you know what we're going to extend the deadlines here for pre trial motions, because we've got to decide this, this issue about whether the government has relied on privilege documents first. Secondly, what role could Kerber possibly have played in the government's decision to withhold evidence, including as this court already found in the prior case, the government still disclosed 1400 pages of discovery. After the district court had signaled that it was going to dismiss the first case. What role could Kerber possibly have played in that. And judge parishes analysis, just ignores this this entirely there's there's no findings about that. It's absolutely lacking under United States versus black. And if there are no further questions I think those are the main points that I wanted to make sure. Let me, let me follow up on morning. Okay. Now that I'm a little more familiar with it. So your point that you're making based on morning, is that the determination by the judge in the first case, doesn't have to be essential necessary to the ultimate judgment. It can be necessary and essential to one issue. Well, it needs to be. No, it needs to be as the issue needs to be essential to an outcome that then gives rise to the opportunity and incentive for the party to challenge that on appeal and make sure that it's fully and fairly litigated. And that's why suppression order is unique. And that's why artery was correctly decided, because the government, not the defendant, solely the government can appeal that suppression order so when the government has an adverse decision on a suppression order that the issues that were decided in that suppression order are essential to that order, obviously, and that order can then be appealed. And I think what really highlights that the, the, the strangeness of the government's position here is that when the shoe was on the other foot, and a criminal defendant brings emotion to suppress and it's decided against the court in the criminal case decides there was no constitutional violation. This court has repeatedly said that that criminal defendant is precluded in the future from raising a 1983 claim premised on those same constitutional violations because the constitutional determinations in the denied suppression satisfied the test for issue was essential to the conviction denied suppression motion couldn't ever be the sole determinate factor of conviction, that the defendant is never convicted, because the government didn't violate his constitutional rights, that would be the analysis that would require that would be required under the government's test. If it's the sole dispositive reason for the conviction that the government didn't violate his constitutional rights, that can't possibly be we do allow. We do allow section 1983 litigation by someone who's been convicted after losing a motion to suppress when the alleged constitutional violation was not necessary for the was not, it was not an issue in the suppression order. It's not that there is no opportunity for an 1883 claim going forward on some other violation, but the violation that was adjudicated in the motion to suppress, even when it was denied, which necessarily could not be essential to that defendants conviction or acquittal. In the end, that has been held to be to be to be issued proclusion applies to that issue under Banks v. Opat, Thompson v. Platt, and McNally v. Colorado State Patrol. This court has decided that issue to be. Thank you, counsel. Thank you, Your Honor. Thank you very much, counsel. Case is submitted. Counselor excused.